# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1028

**EDWARD AMBUSH, ET AL.**

**VERSUS**

**THE MOUNT ZION BAPTIST CHURCH, INC. THROUGH ITS BOARD OF TRUSTEES**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 241,151
HONORABLE GEORGE CLARENCE METOYER, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JIMMIE C. PETERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy, and Shannon J. Gremillion, Judges.

**MOTION TO DISMISS DENIED.
AFFIRMED AND REMANDED.**

Gremillion, J., concurs and assigns written reasons.

**George C. Gaiennie, III
Gaiennie Law Firm, L.L.C.
Post Office Box 1408
Alexandria, LA 71309
(318) 767-1114
COUNSEL FOR DEFENDANT/APPELLANT:**
     **Mount Zion Baptist Church, Inc. through its Board of Trustees**

**Bradley L. Drell**
**B. Gene Taylor, III**
**Gold, Weems, Bruser, Sues & Rundell**
**Post Office Box 6118**
**Alexandria, LA 71307**
**(318) 445-6471**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Mount Zion Baptist Church, Inc. through its Board of Trustees**


**Lindsey J. Scott**
**Scott and Associates, A.P.L.C.**
**632 Saint Ferdinand Street**
**Baton Rouge, LA 70802**
**(225) 387-2688**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Edward Ambush, et al.**

PETERS, J.

This appeal is yet another chapter in the internal struggle for church leadership of Mount Zion Missionary Baptist Church, Incorporated, a/k/a Mount Zion Missionary Baptist Church, located in Alexandria, Louisiana.[1] The plaintiffs in this phase of the litigation involving the church are over 130 members of the church. They brought suit against the church seeking various forms of relief. The church now appeals a trial court judgment that appointed a special master to hold a church election, and which the church contends prohibits the Board of Trustees from performing its duties. For the following reasons, we affirm the trial court judgment and remand this matter to the trial court for further proceedings.

## DISCUSSION OF THE RECORD

The issues presented in this appeal represent only a small part of the litigation that currently engulfs the church, and this is not the only appeal pending before this court at this time. Contemporaneous with this opinion, this court is issuing another opinion involving other issues related to the church's internal governance struggle, and reference is made to that opinion for some of the additional factual background. *See Mt. Zion Missionary Baptist Church v. Ameal Jones, Sr.*, 11-961 (La.App. 3 Cir. __/__/__), ___So.3d___. The judgment in that appeal, which we affirmed, related to Mr. Jones' status as pastor, an election of a new set of trustees for the church, and the particulars of who was in charge of the church business at any given point. As pointed out in that opinion:

> On March 2, 2011, the trial court executed a written judgment which provided in part that the church's preliminary injunction was granted and that Mr. Jones was discharged as pastor of the church; that the purported election of a new Board of Trustees on February 13, 2011, was nullified and set aside; and that Mr. Jones and his agents or representatives were

---

[1]The caption of the plaintiffs' petition names the defendant as The Mount Zion Baptist Church, Inc., through its Board of Trustees. In the petition itself, the plaintiffs identify the defendant as "the Board of Trustees of Mount Zion Baptist Church, Inc." Because the articles of incorporation of the church (which identify the corporation as Mount Zion Baptist Church, Incorporated and not Mount Zion Baptist Church, Inc.) provide that the corporate powers of the corporation are vested in a Board of Trustees, we will simply refer to the defendant in this litigation as the "church."

prohibited and enjoined from entering or occupying any of the property of the church "*as pastor* pending any further action in accordance with the Church bylaws and Louisiana law."

*Id.* at __.

Apparently this latter part of the judgment led to an attempt by the church's trustees to limit certain members' participation in church activities, because on March 21, 2011, the plaintiffs filed a petition against the church seeking relief on a number of levels. Of significance to this litigation was the plaintiffs' request for the appointment of a special master to oversee the calling of a church meeting to elect a new Board of Trustees, and their request for injunctive relief prohibiting the current Board of Trustees from banning them from the church premises. This pleading was assigned to a different division than that to which the prior litigation had been assigned, and on the day following the filing by the plaintiffs, the judge of the new division granted a temporary restraining order ordering the church, through its Board of Trustees, to:

    a. Refrain from preventing Petitioners' access to the Church,

    b. Refrain from conducting any business or special meetings prior to [the trial] court's ruling;

    c. Refrain from manipulating/changing the composition of the current board, until such time that [the trial] court has ruled on this matter.

On April 4, 2011, the trial court held a hearing on the plaintiffs' petition and, after completion of the evidence, granted them part of the relief they requested.

The April 18, 2011 judgment, which arose from the April 4, 2011 hearing, provided in pertinent part that the church was prohibited from preventing the plaintiffs' access to the church facility, and that the trial court would appoint a special master "to ensure that [an] Annual meeting be conducted within fifteen (15) days from the date of the hearing." However, even before the judgment was executed, the

special master had been appointed[2] and had already requested an extension of time in which to hold the Annual Meeting. The trial court extended the deadline and ordered that the Annual Meeting be held on May 1, 2011.

Before the election could be held, the church sought and obtained a suspensive appeal of the April 18, 2011 judgment. The trial court executed the order granting the appeal on April 26, 2011.[3] In that appeal, which is the one now before us, the church raises two assignments of error: "1) The court erred by appointing a special master and authorizing him to hold an annual meeting. 2) The court erred by prohibiting the directors from performing their duties."

### Plaintiffs' Motion to Dismiss

Despite the fact that the trial court granted the church a suspensive appeal, the Annual Meeting took place as scheduled on May 1, 2011, and a new slate of trustees was elected.[4] The plaintiffs have filed a motion to dismiss the church's appeal based on the alleged participation by some of the church's trustees in the May 1, 2011 meeting. The plaintiffs argue that the church, through its Board of Trustees, has unconditionally acquiesced in the election result by their participation.

We deny this motion to dismiss the church's appeal. In the court's ruling on the plaintiffs' supervisory writ addressing the issue of whether the church's appeal was suspensive or devolutive, this court also ruled that the May 1, 2011 election "was null and void because it was conducted after the suspension of the preliminary

---

[2]The transcript of the April 4, 2011 hearing reflects that at the end of the hearing, the trial judge ordered counsel for the litigants to join him in chambers for the purpose of selecting the person to be appointed as special master. No one objected to this action.

[3]Inexplicably, three days later the trial court executed an order granting the church a devolutive appeal as well. In any event, the conflict arising from the execution of the devolutive appeal order has been resolved by this court's unpublished ruling on a supervisory writ application filed by the church. In that ruling, this court found that the execution of the suspensive appeal order by the trial court had the effect of suspending any injunctive relief made available to the plaintiffs by the April 18, 2011 judgment, and that the trial court lacked jurisdiction to execute the devolutive appeal order. *Ambush v. Mount Zion Baptist Church, Inc.*, 11-671 (La.App. 3 Cir. 6/29/11).

[4]While this election has prompted numerous new filings, the issues raised by those filings are not before us.

3

injunction order." *Ambush v. Mount Zion Baptist Church, Inc.*, 11-671 (La.App. 3 Cir. 6/29/11). Furthermore, there exists no evidence in the record before us to support the plaintiffs' argument that the trustees participated in the May 1, 2011 election.

*Assignment of Error Number One*

As stated, this court has already ruled that the May 1, 2011 election was void. However, the church now argues that any election held under the auspices of a court-appointed special master would be invalid. Specifically, the church points to La.R.S. 13:4165(A), which states "[p]ursuant to the inherent judicial power of the court and upon its own motion and *with the consent of all parties litigant*, the court may enter an order appointing a special master in any civil action wherein complicated legal or factual issues are presented or wherein exceptional circumstances of the case warrant such appointment." (Emphasis added.) However, in a situation almost identical to the one before us now, the second circuit approved the appointment of a special master where the parties did not object to the appointment of the special master when the trial court announced that it was going to appoint one. *White v. Bd. of Dirs. of St. Elizabeth Baptist Church*, 42,903 (La.App. 2 Cir. 1/9/08), 974 So.2d 164, *writ denied*, 08-300 (La. 3/28/08), 978 So.2d 311. In *White*, the attorney said "[y]our honor, for the record, I have no objection to the selection of Mr. Johnson. I just maybe have a soft objection to the procedure but I have no objection to the selection." *Id.* at 170. Here the trial counsel did not voice even a "soft" objection to the appointment of a special master. We construe the church's failure to object and its apparent participation in selecting the special master as a "tentative consent" to the appointment of a special master. *Id.* at 170.

The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." A similar provision is contained in article 1, section 8 of the 1974 Louisiana Constitution, which provides: "No law shall be enacted respecting an

4

establishment of religion or prohibiting the free exercise thereof." These constitutional provisions forbid governmental interference with religious freedom. "Civil courts are prohibited from interfering in the ecclesiastical matters of a religious group, that is, in matters concerning religious discipline, faith, rule, custom or law." *LeBlanc v. Davis*, 432 So.2d 239, 241 (La. 1983). However, when a court is asked to determine whether church members complied with the procedures set out in the church's bylaws when it conducted an election, ecclesiastical matters are not at issue. *Id.*

Given the extreme contention over the selection of the Board of Trustees and the many entwined issues that are pending in this and the lower courts, we find that there are exceptional circumstances within the meaning of La.R.S. 13:4165(A) that warrant the appointment of a special master.

### Assignment of Error Number Two

In its other assignment of error, the church argues that the trial court erred in limiting the ability of the existing Board of Trustees to fulfill its obligations under the articles of incorporation to carry on the day-to-day operation of the church. Specifically, the church asserts that the trial court's grant of church access to the plaintiffs, its requirement that the trustees provide a member of the opposition with a key to the church and its alarm code, and its requirement that no action be taken by any party to the litigation until the special master orchestrated an election impinged on the trustees' authority.

A trial court's determination as to whether to issue a preliminary injunction is subject to the abuse of discretion standard of review. *Smith v. W. Va. Oil & Gas Co.*, 373 So.2d 488 (La.1979). Louisiana Code of Civil Procedure Article 3601 provides that "[a]n injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law." During the pendency of an action for a permanent injunction the court may issue a

5

temporary restraining order, a preliminary injunction, or both. La.Code Civ.P. art. 3601(C). A preliminary injunction merely requires a *prima facie* showing that the plaintiff has a good chance to prevail on the merits. *Novelaire Tech., L.L.C. v. Harrison*, 08-157 (La.App. 5 Cir. 8/19/08), 994 So.2d 57. Although the hearing on the preliminary injunction may touch upon, or even tentatively decide, the substantive issues that comprise the petition for the permanent injunction, those substantive issues raised in the principal demand will be decided only after a full trial under ordinary process. *Smith*, 373 So.2d 488; *Novelaire Tech., L.L.C.*, 994 So.2d 57.

Given the circumstances facing the trial court in this unfortunate litigation, we cannot say that the trial court abused its discretion in issuing these orders in dispute by use of a preliminary injunction. Basically, the trial court was attempting to cause the church to follow its own internal rules, and did so in the least intrusive way given the inability of the church members to effect any degree of cooperation.

## DISPOSITION

For the foregoing reasons, we affirm the trial court's April 18, 2011 judgment and remand the matter to the trial court for further proceedings. The plaintiffs' motion to dismiss is denied. All costs of this appeal are assessed to Mount Zion Missionary Baptist Church, Incorporated.

**MOTION TO DISMISS DENIED. AFFIRMED AND REMANDED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1028

EDWARD AMBUSH, ET AL.

VERSUS

THE MOUNT ZION BAPTIST CHURCH, INC. THROUGH ITS BOARD
OF TRUSTEES

**GREMILLION, Judge, concurs and assigns written reasons.**

The actions taken by both the trial court and the majority of this court present a classic illustration of "making the best of a bad situation." It is as clear to me as it is to the majority that the appointment of a special master to oversee the election of the Board of Directors was an entirely reasonable way of dealing with what the majority calls "extreme contention," and "unfortunate circumstances."

I also agree with the majority's decision to rely on the precedent of the Second Circuit in *White v. Board of Directors of St. Elizabeth Baptist Church*, 974 So.2d 164 (La.App. 2 Cir. 1/9/08), *writ denied*, 08-0300 (La. 3/28/08), 978 So.2d 311 which is remarkably on point. The *White* rule allows for the appointment of a special master to oversee the election of the Board of Directors of a non-profit church even without the consent of the parties, when the dispute involves not only the pastor's performance and fitness to serve, but also the failure of the Board of Directors to follow necessary formalities.

However, the fact still remains that La.R.S. 13:4165(A) only allows for a special master upon "the consent of all parties litigant." The court in *White* attempted to get around this obvious mandate by suggesting that the absence of a contemporaneous objection on the part of one of the litigants was somehow the equivalent to consent. It is not.

In the case before us, I would have preferred that the majority simply cite the *White* rule for the proposition that in the face of such hopeless chaos, the trial court need not obtain consent of all the parties. Instead, the majority doubles-down on the notion that no objection equals consent.

I am concerned that this logic could be extended beyond this situation to other analogous situations. After all, all special masters issues are, necessarily, "exceptional circumstances." La.R.S. 13:4165.