# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 13-339

**DR. CARLTON L. WINBERY,**
**DR. FREDERICK L. DOWNING,**
**DR. JAMES R. HEATH, AND**
**DR. CONNIE R. DOUGLAS**

**VERSUS**

**LOUISIANA COLLEGE,**
**LEON HYATT, JR.,**
**JOE AGUILLARD, KENT AGUILLARD,**
**ALAN SHOEMAKER, AMY RUSSELL, AND**
**LOUISIANA INERRANCY FELLOWSHIP**

**\*\*\*\*\*\*\*\*\***

**APPEAL FROM THE**
**NINTH JUDICIAL DISTRICT COURT**
**PARISH OF RAPIDES, DOCKET NO. 184,363, DIV. C**
**HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE**

**\*\*\*\*\*\*\*\*\***

**JAMES T. GENOVESE**
**JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of James T. Genovese, Shannon J. Gremillion, and John E. Conery, Judges.

**AFFIRMED.**

**Victor H. Sooter**
**Sooter & Associates**
**A Limited Liability Company**
**Post Office Box 1671**
**Alexandria, Louisiana 71309**
**(318) 448-8301**
**COUNSEL FOR PLAINTIFFS/APPELLANTS/CROSS-APPELLEES:**
    Dr. Carlton L. Winbery, Dr. Frederick L. Downing,
    Dr. James R. Heath, and Dr. Connie R. Douglas

**Frederic Theodore Le Clercq**
**Joseph L. McReynolds**
**Kelly L. Covington**
**Deutsch, Kerrigan & Stiles, L.L.P.**
**755 Magazine Street**
**New Orleans, Louisiana  70130**
**(504) 581-5141**
**COUNSEL FOR DEFENDANTS/APPELLEES/CROSS-APPELLANTS:**
    **Louisiana College, Leon Hyatt, Jr., Joe Aguillard,**
    **Kent Aguillard, Alan Shoemaker, and Amy Roussell**

**GENOVESE, Judge.**

Plaintiffs, Dr. Carlton L. Winbery, Dr. Frederick L. Downing, Dr. James R. Heath, and Dr. Connie R. Douglas, appeal the dismissal of their lawsuit against Defendants, Louisiana College, Leon Hyatt, Jr., Joe Aguillard, Kent Aguillard, Alan Shoemaker, and Amy Roussell, pursuant to the trial court's grant of Defendants' declinatory exception of lack of subject matter jurisdiction. The trial court reasoned that to resolve Plaintiffs' claims would require an unconstitutional entanglement in a religious dispute under the First Amendment's Establishment Clause. Defendants filed a cross-appeal, challenging the trial court's ruling that the ministerial exception of the First Amendment's Free Exercise Clause did not also apply herein. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Plaintiffs, then faculty members at Louisiana College, filed suit against Leon Hyatt, Jr., the Louisiana Inerrancy Fellowship, and the Louisiana Conservative Resurgency, alleging defamation and intentional infliction of emotional distress. That lawsuit was ultimately settled.

In December 2005, Plaintiffs, now former professors[1] of Louisiana College, filed another lawsuit alleging that efforts were made by Defendants herein to defame, preclude advancement, violate long-held academic freedom, violate Louisiana College's Faculty Handbook provisions, and to breach the aforementioned settlement contract. Defendants filed a declinatory exception of lack of subject matter jurisdiction seeking a dismissal of Plaintiffs' claims on the basis that the lawsuit is barred by the United States Constitution and the Louisiana

---

[1]Since the filing of the current lawsuit, Plaintiffs have either retired or resigned from Louisiana College.

Constitution. Invoking what is known as the ministerial exception, Defendants argued that Plaintiffs' suit was barred by the First Amendment's Free Exercise Clause because the claims at issue concerned the employment relationship between a religious institution, or church, and one of its ministers. Defendants rely upon the Supreme Court's holding in *Hosanna-Tabor Evangelical Lutheran Church & School v. Equal Employment Opportunity Commission*, ___ U.S. ___, 132 S.Ct. 694 (2012), to support their contention that Louisiana College is a church and Plaintiffs are ministers. Additionally, Defendants contend that determining the validity of Plaintiffs' claims would require a court to determine the truth or falsity of certain religious beliefs and Baptist ecclesiastical disagreements over inerrancy or literal truth of the Bible as scripture, thereby violating the constitutional protections against government entanglement with religion found in the First Amendment's Establishment Clause.

Plaintiffs argue that Defendants were not entitled to the protection of the ministerial exception because Louisiana College is non-hierarchical religious college where Plaintiffs were not ministers, and the college was not a church. Plaintiffs rely upon *Equal Employment Opportunity Commission v. Mississippi College*, 626 F.2d 477 (5th Cir. 1980), *cert. denied*, 453 U.S. 912, 101 S.Ct. 3143 (1981), asserting that it is analogous and instructive herein. According to Plaintiffs, the Supreme Court's holding in *Hosanna-Tabor*, 132 S.Ct. 694, is not helpful to Defendants' position relative to the applicability of the ministerial exception. Instead, Plaintiffs contend that it bolsters their assertion that the ministerial exception is not a jurisdictional bar, but rather an affirmative defense to be asserted at trial and that Defendants' presentation of this matter as a declinatory exception of lack of subject matter jurisdiction is unsupported. Plaintiffs further

argue that their claims present neutral principles of law, not religious doctrine or practice; therefore, determinations of defamation, retaliation, and contractual matters would not entail an impermissible venture, or government entanglement, into ecclesiastical matters.

A hearing on Defendants' declinatory exception was held on February 6, 2012, after which the trial court issued Reasons for Judgment on March 28, 2012, finding in favor of Defendants and dismissing Plaintiffs' claims. In sustaining Defendants' declinatory exception, the trial court held that it was not precluded from exercising jurisdiction over claims asserted pursuant to the ministerial exception of the Free Exercise Clause, but that it was precluded from exercising jurisdiction over Plaintiffs' claims on the basis that resolving those claims would necessitate an unconstitutional entanglement in a religious dispute. Judgment dismissing Plaintiffs' demands against Defendants was signed on May 4, 2012.[2] Plaintiffs sought a new trial, which was denied on September 13, 2012. Both Plaintiffs and Defendants appeal.

## ASSIGNMENTS OF ERROR

*Plaintiffs/Appellants/Cross-Appellees*

Plaintiffs appeal the trial court's ruling that it did not possess subject matter jurisdiction over their claims pursuant to the Establishment Clause. Specifically, Plaintiffs assert that the trial court "erroneously granted the Peremptory Exception of Lack of Subject Matter Jurisdiction[,]" and "denied [their] Motion for New Trial."

---

[2]Plaintiffs' claims against the Louisiana Inerrancy Fellowship were not dismissed pursuant to this judgment.

3

*Defendants/Appellees/Cross-Appellants*

Defendants have cross-appealed that portion of the trial court's ruling that held that the court did not possess subject matter jurisdiction over Plaintiffs' claims under the Free Exercise Clause. Specifically, Defendants assert that the trial court erred in: (1) "finding that Louisiana College is not a 'church' or 'religious group' for purposes of the Free Exercise Clause[,]" and (2) "holding that the Free Exercise Clause did not bar the court from having jurisdiction over this action."

## STANDARD OF REVIEW

> The issue of subject matter jurisdiction presented . . . on appeal involves a question of law. Questions of law are reviewed under the *de novo* standard of review. *La. Mun. Ass'n v. State*, 04-227 (La. 1/9/05), 893 So.2d 809. Therefore, we must determine whether the court below was legally correct. *City of New Orleans v. Bd. of Comm'r of Orleans Levee Dist.*, 93-690 (La. 7/5/94), 640 So.2d 237.

*Chavers v. Bright Truck Leasing*, 06-1011, p. 10 (La.App. 3 Cir. 12/6/06), 945 So.2d 838, 844 n.4, *writ denied*, 07-304 (La. 4/5/07), 954 So.2d 141.

## LAW AND DISCUSSION

"Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted." La.Code Civ.P. art. 2. The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." A similar provision is contained in Article 1, Section 8 of the Louisiana Constitution, which provides, "No law shall be enacted respecting an establishment of religion or prohibiting the free exercise thereof."

4

Plaintiffs' appeal presents the issue of whether the trial court was correct in ruling that it was precluded from exercising its subject matter jurisdiction pursuant to the First Amendment's Establishment Clause. Defendants' appeal presents the issue of whether the trial court was correct in ruling that Defendants were not entitled to the protection afforded by the ministerial exception grounded in the First Amendment's Free Exercise Clause.

*Defendants' Cross-Appeal—The Free Exercise Clause*

The Free Exercise Clause of the United States Constitution restricts the government's ability to intrude into ecclesiastical matters or to interfere with a church's governance of its own affairs. "[M]atters touching the relationship between a church and its ministers, including the selection of a minister, determination of salary, and assignment of duties and location, are 'matters of church administration and government and thus, purely of ecclesiastical cognizance.'" *Mississippi College*, 626 F.2d at 485 (quoting *McClure v. Salvation Army*, 460 F.2d 553, 559-60 (5th Cir.), *cert. denied*, 409 U.S. 896, 93 S.Ct. 132 (1972)). Thus, in order for Defendants to garner the protection of the ministerial exception, two findings are required: (1) that the institution in question is a church; and (2) that the plaintiffs are ministers of that church. *Id*.

In *Hosanna-Tabor*, 132 S.Ct. 694, a teacher filed a complaint with the Equal Employment Opportunity Commission (EEOC), alleging that she was fired in retaliation for threatening to file an Americans with Disabilities Act (ADA) lawsuit. In the United States Supreme Court's first decision relative to the application of the ministerial exception in an employment discrimination lawsuit, Chief Justice John Roberts wrote:

Until today, we have not had occasion to consider whether this freedom of a religious organization to select its ministers is implicated by a suit alleging discrimination in employment. The Courts of Appeals, in contrast, have had extensive experience with this issue. Since the passage of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and other employment discrimination laws, the Courts of Appeals have uniformly recognized the existence of a "ministerial exception," grounded in the First Amendment, that precludes application of such legislation to claims concerning the employment relationship between a religious institution and its ministers.

We agree that there is such a ministerial exception. The members of a religious group put their faith in the hands of their ministers. Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision. Such action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs. By imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. According the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions.

*Id.* at 705-06 (footnote omitted).

In this case, the trial court rejected Defendants' contention that *Hosanna-Tabor*, 132 S.Ct. 694, is controlling herein, explaining in its Reasons for Judgment:

[I]ts application to the instant case is limited. While *Hosanna-Tabor* does provide an excellen[t] analysis of the second prong of the ministerial exception, [i.e.,] the minister requirement, it does not provide any guidance on the first prong of the exception[,] i.e., the "church requirement."

The plaintiff in *Hosanna-Tabor*, was a teacher at a Lutheran school. The school was directly affiliated with the Lutheran Church by the same name. *Hosanna-Tabor's* status as a "church" was established and was not at issue on appeal. The only issue before the Court was whether or not the plaintiff teacher could be considered a "minister" of that church.

6

The trial court, following the holding of *Mississippi College*, 626 F.2d 477, and determining from the evidence presented that "Louisiana College is structurally similar to Mississippi College[,]" held that Louisiana College is not a church, nor were Plaintiffs ministers; therefore, the ministerial exception does not apply in this case. We agree.

In *Mississippi College*, 626 F.2d 477, an employee filed a complaint with the EEOC, alleging gender discrimination. The EEOC investigated the charge and issued a subpoena. The college, relying upon *McClure*, 460 F.2d 553, resisted the subpoena, arguing that the employment relationship between a religious education institution and its faculty was exempt from Title VII of the Civil Rights Act of 1964. The Fifth Circuit distinguished this matter from *McClure*, 460 F.2d 553, and held that the relationship between a religious educational institution and its faculty was not exempt from coverage under Title VII, the college was not a church, and its faculty and staff did not function as ministers.

In our de novo review of the evidence in the record, we find the trial court's reliance on *Mississippi College*, 626 F.2d 477, and its resultant holding to be correct. The trial court was correct in noting the clear similarities between Louisiana College and Mississippi College.

Both colleges are co-educational liberal arts institutions that have undergraduate curricula which require all students to take certain religious courses. Mississippi College was owned and operated by the Mississippi Baptist Convention, an organization composed of Mississippi's Southern Baptist Churches. Louisiana College is governed by a Board of Trustees, elected by the Louisiana Baptist Convention, an organization composed of Louisiana's Southern Baptist Churches. Noteworthy is the fact that three Plaintiffs herein, Dr. Winbery,

Dr. Downing, and Dr. Heath, are ordained Baptist ministers, and all four Plaintiffs, including Dr. Douglas, taught a required religious class. We find the holding in *Mississippi College*, 626 F.2d 477, to be instructive and the trial court's adherence thereto to be correct. Of particular significance, to both the trial court and this court, is the Fifth Circuit's explanation that:

> The College is not a church. The College's faculty and staff do not function as ministers. The faculty members are not intermediaries between a church and its congregation. They neither attend to the religious needs of the faithful nor instruct students in the whole of the religious doctrine. That faculty members are expected to serve as exemplars of practicing Christians does not serve to make the terms and conditions of their employment matters of church administration and thus purely of ecclesiastical concern.

*Id.* at 485.

Finally, while *Hosanna-Tabor*, 132 S.Ct. 694, is significant for the Supreme Court's recognition of the ministerial exception in an employment discrimination lawsuit, we find Defendants reliance upon it wholly unpersuasive. In *Hosanna-Tabor*, 132 S.Ct. 694, there was no question that the Evangelical Lutheran Church and School was a church. Instead, the court considered only whether or not Cheryl Perich, a called teacher,[3] was a minister of said church. Additionally, Chief Justice Roberts opined: "Today we hold only that the ministerial exception bars such a suit. We express no view on whether the exception bars other types of suits, including actions by employees alleging breach of contract or tortious conduct by their religious employees." *Id.* at 710.

In further addressing Defendants' cross-appeal, and more particularly, we note that Defendants have listed the following two assignments of error:

---

[3]"'Called' teachers are regarded as having been called to their vocation by God through a congregation. To be eligible to receive a call from a congregation, a teacher must satisfy certain academic requirements." *Hosanna-Tabor*, 132 S.Ct. at 699.

1. The [trial court] erred in finding that Louisiana College is not a "church" or "religious group" for purposes of the Free Exercise Clause.

2. As a result, the [trial court] erred in holding that the Free Exercise Clause did not bar the court from having jurisdiction over this action.

The judgment appealed from granted Defendants' Peremptory Exception of Lack of Subject Matter Jurisdiction. Defendants' two assignments of error do not address the granting of their exception, but take issue with the trial court's reasons for judgment. "Appeals are taken from the judgment, not the reasons for judgment." *Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586, p. 77 (La. 4/1/11), 61 So.3d 507, 572. "'The written reasons for judgment are merely an explication of the trial court's determinations. They do not alter, amend, or affect the final judgment being appealed . . . .' *State in the Interest of Mason*, 356 So.2d 530, 532 (La.App. 1 Cir.1977)." *Id*. Appellate courts review judgments, not reasons for judgment. Defendants' cross-appeal is actually an appeal of the trial court's written reasons for judgment and not the judgment itself. Therefore, Defendants' cross-appeal challenging the trial court's ruling is without merit. We find no error in the trial court's determination that the ministerial exception of the First Amendment's Free Exercise Clause is inapplicable herein.

*Plaintiffs' Appeal—The Establishment Clause*

The Establishment Clause of the United States Constitution restricts the government from making any law "respecting an establishment of religion." Article 1, Section 8 of the Louisiana Constitution echoes this provision. "These constitutional provisions forbid governmental interference with religious freedom. 'Civil courts are prohibited from interfering in the ecclesiastical matters of a religious group, that is, in matters concerning religious discipline, faith, rule,

9

custom or law.' *LeBlanc v. Davis*, 432 So.2d 239, 241 (La.1983)." *Ambush v. Mount Zion Baptist Church, Inc.*, 11-1028, p. 5 (La.App. 3 Cir. 2/22/12), 88 So.3d 1077, 1081.

In its Reasons for Judgment, the trial court opined:

> Under the Establishment Clause, the consideration is whether the issues which the court will have to resolve will necessarily turn upon competing interpretations of religion, thus resulting in the court becoming "entangled" in an ecclesiastical dispute. *Michael Hartwig v. Albertus Magnus College and Julia McNamara*, 93 F. Supp. 2d 200 (D. Conn. 2000). The "Entanglement Doctrine" provides that a court must decline jurisdiction over a lawsuit when the dispute is so intertwined with matters of religion that a proper resolution cannot be made without interpreting or choosing between competing religious principles or doctrines.

Plaintiffs argue that their claims, sounding in contract and tort, can be decided upon neutral principles of law and without excessive entanglements. Plaintiffs contend that the trial court erred in finding that their claims were outside the scope of judicial review under the First Amendment.

It is Defendants' contention that this is not a secular dispute; rather, it is a dispute within Louisiana College's Theology Department about Baptist faith. Defendants argue that this matter is so intertwined with matters of religion that a proper resolution cannot be made with interpreting or choosing between competing religious principles or doctrines.

Relative to the issue of defamation, the trial court reasoned that to determine whether the accusations that professors were teaching errant views, the court would have to "delve deeply into the Baptist theology." The remaining issues also require an examination and interpretation of dogma.

The trial court was correct in holding that the dispute between Plaintiffs and Defendants centers on the nature of Baptist theology and church governance over

how theology is taught at Louisiana College and would, thus, require the court to impermissibly entangle itself in deciding ecclesiastical matters. Defendants' declinatory exception of lack of subject matter jurisdiction was correctly sustained by the trial court.

## DECREE

Accordingly, the judgment of the trial court sustaining Defendants' declinatory exception of lack of subject matter jurisdiction is hereby affirmed. The ruling of the trial court declaring that the ministerial exception of the First Amendment's Free Exercise Clause is inapplicable is also affirmed. Costs of this appeal are to be divided by the parties.

**AFFIRMED.**